UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| Terri Stivers, on behalf of herself and others similarly situated,<br><br>   Plaintiff,<br><br>vs.<br><br>TrueAccord Corp.,<br><br>   Defendant. | Case No. 2:21-cv-2272<br><br>**Complaint – Class Action**<br><br>**Jury Trial Demanded** |

## NATURE OF ACTION

1. Terri Stivers ("Ms. Stivers") brings this class action against TrueAccord Corp. ("Defendant") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) because Defendant has its principal place of business in this district.

## PARTIES

4. Ms. Stivers is a natural person who at all relevant times resided in Fresno County, California.

5. Ms. Stivers is obligated, or allegedly obligated, to pay a debt owed or due, or asserted to be owed or due, a creditor other than Defendant.

6. Ms. Stivers's obligation, or alleged obligation, owed or due, or asserted to be owed or due, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, a personal credit card with Synchrony Bank (the "Debt").

7. Ms. Stivers is a "consumer" as defined by 15 U.S.C. § 1692a(3).

8. Defendant is a Delaware corporation with its principal office in Johnson County, Kansas.

9. Defendant holds itself out as "a debt collection agency."[1]

10. Defendant is an entity that at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Ms. Stivers, as defined by 15 U.S.C. § 1692a(5).

11. Upon information and belief, at the time Defendant attempted to collect the Debt from Ms. Stivers, the Debt was in default, or Defendant treated the Debt as if they were in default from the time that Defendant acquired it for collection.

12. Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts, or to regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

13. Defendant held itself out to Ms. Stivers as a debt collector.

## FACTUAL ALLEGATIONS

14. On or about June 25, 2020—in the midst of the Covid-19 pandemic—Defendant sent Ms. Stivers a written communication in connection with the collection of the Debt.

---

[1] *See* https://www.trueaccord.com/ (last accessed June 16, 2021).

15. A true and correct copy of Defendant's June 25, 2020 written communication is attached as Exhibit A.

16. Defendant's June 25, 2020 written communication begins by encouraging Ms. Stivers to "[p]lease talk to us." Ex. A.

17. Next, Defendant's June 25, 2020 threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together.

*Id*. (emphasis added).

18. Thereafter, Defendant's June 25, 2020 written communication advises Ms. Stivers:

> Get in touch so you can resolve this debt.
> Our records show that you haven't been in touch with us. We're here to work with you.
>
> You should respond especially if you have questions about this outstanding balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).
>
> Don't just disregard this email. Talk to us. It's the best way to resolve this debt.

*Id*.

19. On or about June 29, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Debt.

20. A true and correct copy of Defendant's June 29, 2020 written communication is attached as Exhibit B.

21. Defendant's June 29, 2020 written communication begins by advising Ms. Stivers that "[i]t's not too late." Ex. B.

22. Next, Defendant's June 29, 2020 communication again threatens Ms. Stivers:

3

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together.

*Id.* (emphasis added).

23. Thereafter, Defendant's June 29, 2020 written communication advises Ms. Stivers:

> Terri, your outstanding balance to LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account) needs some attention.
> Don't worry though, it's not too late.  We have agents standing by ready to help, so please get in touch so we can get this resolved.

*Id.*

24. On or about July 2, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Debt.

25. A true and correct copy of Defendant's July 2, 2020 written communication is attached as Exhibit C.

26. Defendant's July 2, 2020 written communication begins by advising Ms. Stivers, "You can do this." Ex. C.

27. Next, Defendant's July 2, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together.

*Id.* (emphasis added).

28. Thereafter, Defendant's July 2, 2020 written communication advises Ms. Stivers:

> You owe money to LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).
> Your past due balance is $1,258.75.
> If you don't believe you are liable for this debt, reach out now. If this is your obligation, pay off your balance easily or apply for a payment plan.

4

*Id*.

29. On or about July 9, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Debt.

30. A true and correct copy of Defendant's July 9, 2020 written communication is attached as Exhibit D.

31. Defendant's July 9, 2020 written communication begins by advising Ms. Stivers, "This is your reminder." Ex. D.

32. Next, Defendant's July 9, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together.

*Id*. (emphasis added).

33. Thereafter, Defendant's July 9, 2020 written communication advises Ms. Stivers:

> Your balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account) is still outstanding.
> It's been a stressful few months and it's hard to remember every little obligation.
> This balance is still outstanding.

*Id*.

34. On or about July 13, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Debt.

35. A true and correct copy of Defendant's July 13, 2020 written communication is attached as Exhibit E.

36. Defendant's July 13, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together.

Ex. E (emphasis added).

38. Thereafter, Defendant's July 13, 2020 written communication advises Ms. Stivers:

> You've had many opportunities to resolve your outstanding balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).
> Dear Terri Stivers, have you been waiting to pay because you didn't have any spare cash?

*Id*.

38. The July 13, 2020 written communication continues:

> We're concerned because we've been trying to reach you for a few months now, but there is no payment arrangement set up for this account. Even if money is too tight, we have options for you!

*Id*.

39. On or about July 16, 2020, Defendant sent Ms. Stivers another written communication in connection with the collection of the Debt.

40. A true and correct copy of Defendant's July 16, 2020 written communication is attached as Exhibit F.

41. Defendant's July 16, 2020 written communication begins by advising Ms. Stivers, "We want to help you." Ex. F.

42. Defendant's July 16, 2020 communication again threatens Ms. Stivers:

> At this time, no attorney has personally reviewed the particular circumstances of your account. **However, if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit.** We'd like to avoid this, and find a way to work together.

*Id*. (emphasis added).

43. Thereafter, Defendant's July 16, 2020 written communication advises Ms. Stivers:

> We've been trying to get your attention.
> Terri, you have an outstanding balance with LVNV Funding LLC (current creditor of your original Synchrony Bank (Synchrony Home) account).
>
> It's not too late to pay this off. Start the seamless payment process by visiting our website today.

*Id*.

44. Defendant sent additional written communications to Ms. Stivers on July 22, 2020, July 27, 2020, August 1, 2020, August 4, 2020, August 7, 2020, August 10, 2020, August 13, 2020, August 16, 2020, August 22, 2020, August 26, 2020, August 30, 2020, September 2, 2020, September 4, 2020, September 8, 2020, September 11, 2020, September 15, 2020, September 21, 2020, September 25, 2020, September 29, 2020, October 3, 2020, October 6, 2020, October 9, 2020, October 13, 2020, October 17, 2020, October 20, 2020, October 22, 2020, October 25, 2020, October 27, 2020, October 30, 2020, November 1, 2020, and November 6, 2020.

45. Each of these written communications threatens Ms. Stivers that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit."

46. Upon information and belief, as of November 6, 2020, Defendant had not returned the Debt to LVNV.

47. Upon information and belief, LVNV has not filed a lawsuit against Ms. Stivers regarding the Debt.

## Class Action Allegations

48. Ms. Stivers brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of the following class:

> All persons (a) with a Kansas or California address, (b) to whom TrueAccord sent at least 15 debt collection communications not known to be returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) in the one year preceding the date of this complaint, (e) that included the language "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit."

49. Excluded from the class is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had controlling interests.

50. The class satisfies Rule 23(a)(1) because, upon information and belief, it is so numerous that joinder of all members is impracticable.

51. The exact number of class members is unknown to Ms. Stivers at this time and can only be determined through appropriate discovery.

52. The class is ascertainable because it is defined by reference to objective criteria.

53. In addition, upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by Defendant.

54. The class satisfies Rules 23(a)(2) and (3) because Ms. Stivers's claims are typical of the claims of the members of the class.

55. To be sure, Ms. Stivers's claims and those of the members of the class originate from the same standardized debt collection communications utilized by Defendant, and Ms. Stivers possesses the same interests and has suffered the same injuries as each member of the class she seeks to represent.

56. Ms. Stivers satisfies Rule 23(a)(4) because she will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

57. Ms. Stivers has no interests that are contrary to or in conflict with the members of the class that she seeks to represent.

58. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since, upon information and belief, joinder of all members is impracticable.

59. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation could make it impracticable for the members of the class to individually redress the wrongs done to them.

60. There should be no unusual difficulty in the management of this action as a class action.

61. Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

62. Among the issues of law and fact common to the class:

    a. Defendant's violations of the FDCPA as alleged herein;

    b. whether Defendant is a debt collector as defined by the FDCPA;

    c. the availability of statutory penalties; and

    d. the availability of attorneys' fees and costs.

**Count I: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e**

63. Ms. Stivers repeats and re-alleges each factual allegation contained in paragraphs 1 - 62.

64. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

65. The FDCPA at 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

66. "Section 1692e was enacted against a backdrop of cases in which courts held that communications designed to create a false sense of urgency were deceptive." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 348 (5th Cir. 2002).

67. Not surprisingly, then, the FDCPA may be violated if "a debt collector 'creates a false sense of urgency.'" *Uyeda v. J.A. Cambece Law Office, P.C.*, No. 04-04312, 2005 WL 1168421, at *3 (N.D. Cal. 2005) (quoting *Morgan v. Credit Adjustment Bd.*, 999 F. Supp. 803, 808 (E.D. Va. 1998)); *see also Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 FR 50097-02, 1988 WL 269068, at 8 at 50106 (Dec. 13, 1988) ("A debt collector may not communicate by a format or envelope that misrepresents the nature, purpose, or urgency of the message. It is a violation to send any communication that conveys to the consumer a false sense of urgency.").

68. As early as June 2020, Defendant began separately threatening Ms. Stivers that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit." *See, e.g.*, Ex. A.

69. Ms. Stivers did not contact Defendant about the Debt in response to the June 2020 communication.

70. No matter, for at least five months, Defendant continued to inundate Ms. Stivers with debt collection communications threatening that if she failed to contact Defendant about the Debt, it would be returned to LVNV, who may then forward it to an attorney to file suit.

71. Upon information and belief, Defendant did not return the Debt to LVNV during this time, nor did LVNV file a lawsuit against Ms. Stivers.

72. As a result, Defendant created a false sense of urgency by repeatedly pressuring Ms. Stivers to contact Defendant about the Debt using threats that appeared time-sensitive in nature, but with which Defendant did not follow through.

73. Moreover, Defendant's threats, though appearing to be time-sensitive in nature to the least sophisticated consumer, were not actually time-sensitive in nature because Defendant had no intention to immediately pursue the threatened action, as evidenced by Defendant's failure to take the threatened action in a timely manner.

74. Thus, Defendant violated 15 U.S.C. § 1692e by using a false, deceptive, or misleading representation or means in connection with the collection of an alleged debt.

75. The harm suffered by Ms. Stivers is particularized in that the violative debt collection conduct was directed at her personally and regarded her personal alleged debt.

76. Creating a false sense of urgency "implicate[s] core Congressional concerns underlying the FDCPA." *Peter*, 310 F.3d at 352.

77. And Ms. Stivers suffered harm here by way of the impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications.

78. Due to other financial obligations that take priority, Ms. Stivers was unable to make any payments on the Debt.

11

79. Because Ms. Stivers was worried about the legal consequences of continuing to ignore Defendant's communications which threatened a lawsuit if she did not respond, she ultimately contacted counsel for legal advice concerning the threats, including on the timing of when Defendant would be filing suit.

80. Furthermore, Defendant's debt collection conduct also created a material risk of harm to a concrete interest Congress was trying to protect in enacting the FDCPA.

81. That is, a consumer who is faced with repeated threats of an imminent lawsuit for months on end is likely to suffer stress and anxiety.

82. And here, Ms. Stivers suffered stress and anxiety over the repeated threats—often several times a week for months on end—that if she did not pay the Debt, a lawsuit might soon be filed against her.

83. As well, the repeated threats to Ms. Stivers that Defendant sent to her electronic mail inbox—sometimes multiples times in a week—constitute an invasion of Ms. Stivers's privacy.

**Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(10)**

84. Ms. Stivers repeats and re-alleges each factual allegation contained in paragraphs 1 - 62.

85. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

86. The FDCPA at 15 U.S.C. § 1692e(10) prohibits a debt collector from "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

87. As early as June 2020, Defendant began threatening Ms. Stivers that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit." *See, e.g.*, Ex. A.

88. Ms. Stivers did not contact Defendant about the Debt in response to the June 2020 communication.

89. No matter, for at least five months, Defendant continued to inundate Ms. Stivers with debt collection communications threatening that if she failed to contact Defendant about the Debt, it would be returned to LVNV, who may then forward it to an attorney to file suit.

90. Upon information and belief, Defendant did not return the Debt to LVNV during this time, nor did LVNV file a lawsuit against Ms. Stivers.

91. As a result, Defendant created a false sense of urgency by repeatedly pressuring Ms. Stivers to contact Defendant about the Debt using threats that appeared time-sensitive in nature, but with which Defendant did not follow through.

92. Moreover, Defendant's threats, though appearing to be time-sensitive in nature to the least sophisticated consumer, were not actually time-sensitive in nature because Defendant had no intention to immediately pursue the threatened action, as evidenced by Defendant's failure to take the threatened action in a timely manner.

93. Thus, Defendant violated 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect any debt.

94. The harm suffered by Ms. Stivers is particularized in that the violative debt collection conduct was directed at her personally and regarded her personal alleged debt.

95. Creating a false sense of urgency "implicate[s] core Congressional concerns underlying the FDCPA." *Peter*, 310 F.3d at 352.

96. And Ms. Stivers suffered harm here by way of the impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications.

97. Due to other financial obligations that take priority, Ms. Stivers was unable to make any payments on the Debt.

98. Because Ms. Stivers was worried about the legal consequences of continuing to ignore Defendant's communications which threatened a lawsuit if she did not respond, she ultimately contacted counsel for legal advice concerning the threats, including on the timing of when Defendant would be filing suit.

99. Furthermore, Defendant's debt collection conduct also created a material risk of harm to a concrete interest Congress was trying to protect in enacting the FDCPA.

100. That is, a consumer who is faced with repeated threats of an imminent lawsuit for months on end is likely to suffer stress and anxiety.

101. And here, Ms. Stivers suffered stress and anxiety over the repeated threats—often several times a week for months on end—that if she did not pay the Debt, a lawsuit might soon be filed against her.

102. As well, the repeated threats to Ms. Stivers that Defendant sent to her electronic mail inbox—sometimes multiples times in a week—constitute an invasion of Ms. Stivers's privacy.

**Count III: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f**

103. Ms. Stivers's repeats and re-alleges each factual allegation contained in paragraphs 1 - 62.

104. Congress enacted the FDCPA in 1977 to "eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), and in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which Congress found to have contributed "to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

105. The FDCPA prohibits the use of unfair or unconscionable means to collect debts. *See* 15 U.S.C. § 1692f.

106. In addition to the non-exhaustive list of conduct that violates the FDCPA, § 1692f "allows a court to sanction improper conduct the FDCPA fails to address specifically." *Turner v. Prof'l Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 580 (D.N.J. 2013) (quoting *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)).

107. As early as June 2020, Defendant began threatening Ms. Stivers that "if you fail to contact us about this account it will be returned to our client who then may forward it to a local attorney for the purposes of filing suit." *See, e.g.*, Ex. A.

108. Ms. Stivers did not contact Defendant about the Debt in response to the June 2020 communication.

109. No matter, for at least five months, Defendant continued to inundate Ms. Stivers with debt collection communications threatening that if she failed to contact Defendant about the Debt, it would be returned to LVNV, who may then forward the Debt to an attorney to file suit.

110. Upon information and belief, Defendant did not return the Debt to LVNV during this time, nor did LVNV file a lawsuit against Ms. Stivers.

111. As a result, Defendant created a false sense of urgency by repeatedly pressuring Ms. Stivers to contact Defendant about the Debt using threats that appeared time-sensitive in nature, but with which Defendant did not follow through.

112. Moreover, Defendant's threats, though appearing to be time-sensitive in nature to the least sophisticated consumer, were not actually time-sensitive in nature because Defendant had no intention to immediately pursue the threatened action, as evidenced by Defendant's failure to take the threatened action in a timely manner.

113. Thus, Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means against Ms. Stivers in connection with an attempt to collect an alleged debt.

114. The harm suffered by Ms. Stivers is particularized in that the violative debt collection conduct was directed at her personally and regarded her personal alleged debt.

115. Creating a false sense of urgency "implicate[s] core Congressional concerns underlying the FDCPA." *Peter*, 310 F.3d at 352.

116. And Ms. Stivers suffered harm here by way of the impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications.

117. Due to other financial obligations that take priority, Ms. Stivers was unable to make any payments on the Debt.

118. Because Ms. Stivers was worried about the legal consequences of continuing to ignore Defendant's communications which threatened a lawsuit if she did not respond, she

ultimately contacted counsel for legal advice concerning the threats, including on the timing of when Defendant would be filing suit.

119. Furthermore, Defendant's debt collection conduct also created a material risk of harm to a concrete interest Congress was trying to protect in enacting the FDCPA.

120. That is, a consumer who is faced with repeated threats of an imminent lawsuit for months on end is likely to suffer stress and anxiety.

121. And here, Ms. Stivers suffered stress and anxiety over the repeated threats—often several times a week for months on end—that if she did not pay the Debt, a lawsuit might soon be filed against her.

122. Finally, the repeated threats to Ms. Stivers that Defendant sent to her electronic mail inbox—sometimes multiples times in a week—constitute an invasion of Ms. Stivers's privacy.

WHEREFORE, Ms. Stivers respectfully requests relief and judgment, as follows:

A. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

B. Adjudging and declaring that Defendant violated 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10), and 15 U.S.C. § 1692f;

C. Awarding Ms. Stivers and members of the class statutory damages;

D. Awarding members of the class actual damages, as incurred;

F. Enjoining Defendant from future violations of 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10), and 15 U.S.C. § 1692f with respect to Ms. Stivers and the class;

G. Awarding Ms. Stivers and members of the class their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 15 U.S.C. § 1692k and Rule 23 of the Federal Rules of Civil Procedure;

H. Awarding Ms. Stivers and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

I. Awarding other and further relief as the Court may deem just and proper.

## Jury Demand

Ms. Stivers is entitled to and hereby demands a trial by jury. Ms. Stivers requests that the trial be held in Kansas City.

Dated: June 16, 2021

Respectfully submitted,

/s/ *Tony LaCroix*
Tony LaCroix
Reg. Number: 24279
LaCroix Law Firm LLC
1600 Genessee, Ste 956
Kansas City, MO 64102
Tel: (816) 399-4380
tony@lacroixlawkc.com

James L. Davidson (FL Bar No. 723371)*
Greenwald Davidson Radbil PLLC
7601 N. Federal Hwy, Suite A-230
Boca Raton, FL 33487
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com

Attorneys for Ms. Stivers and the proposed class

* to seek admission *pro hac vice*